IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


CHRISTOPHER JAY TAMAYO                                              PLAINTIFF


VS.                          CASE NO. 4:16CV00658 PSH


NANCY A. BERRYHILL, Acting Commissioner,
    Social Security Administration                                  DEFENDANT


**ORDER**

Plaintiff Christopher Jay Tamayo ("Tamayo") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance Benefits ("DIB"). Tamayo contends the Administrative Law Judge ("ALJ") erred in the following ways: (1) failing to find that he met the requirements of Listing 11.14; (2) erroneously assessing his mental residual functional capacity ("RFC"); (3) reaching a decision which was not supported by substantial evidence; and (4) failing to fully and fairly develop the record. The parties ably summarized the medical records and the testimony given at the administrative hearing conducted on April 7, 2015. (Tr. 28-61). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g).

*Administrative Hearing:* At the outset of the evidentiary hearing, Tamayo's attorney stated he was disabled at step 2, meeting Listing 11.14, or, in the alternative, at step 5. The ALJ confirmed with Tamayo's attorney that nerve conduction studies were negative, and that there were no clinical diagnoses satisfying Listing 11.14.

1

Tamayo testified to back problems beginning eight years prior, and to tremors which have progressively worsened and now occur "every day all the time." (Tr. 38). According to Tamayo, the tremors occur in his arms, legs, and hands. He stated he uses a cane, which was prescribed three to fours years earlier, to help with his balance issues. Tamayo described problems with falling down and lack of strength in his hands, which resulted in problems lifting and carrying, and that he avoids buttons and zippers. Tamayo estimated he could stand for 15-20 minutes. Tamayo described his symptoms on a bad day as extremely debilitating, with no energy, lying down all day, and doing nothing. He also stated his range of motion was limited, and he had problems reaching. Tamayo stated he took a prescription pain medication, Opana, which produced side effects of fatigue and decreased concentration. According to Tamayo, he experiences numbness and tingling in his extremities, and requires three to four naps daily. Asked if he could perform a sedentary job, Tamayo said his tremors and poor concentration would preclude him from such work. Tamayo stated his precise diagnosis was unclear, and it was possibly an undiagnosed genetic nerve damage disorder. (Tr. 37-54).

Diane Smith ("Smith"), a vocational expert, testified Tamayo could not perform any of his past relevant work, which included the jobs of delivery driver and phlebotomist. The ALJ asked Smith to assume a worker of Tamayo's age, education, and experience, who could perform sedentary work except that the worker could occasionally stoop, crouch, bend, kneel, crawl, and balance, and the worker was limited to work which was simple, routine, and repetitive with supervision which was simple, direct, and concrete. Smith testified that such a worker could perform jobs including the jobs of telephone quote clerk and table worker. The ALJ, in a second hypothetical question posed to Smith, added the restriction that the worker would be limited to

2

occasional reaching, handling, and fingering. Smith cited the jobs of telephone clerk and surveillance system monitor as available to such a worker. Smith's testimony on availability of these jobs did not change when the ALJ added the need for the worker to use a cane for ambulation. If the variable of three absences a month or two unscheduled breaks daily were added, Smith stated there would be no jobs available for such a worker. (Tr. 54-59).

*The ALJ's Decision:* In his July 2015 opinion, the ALJ determined the relevant time period under consideration was from the alleged onset date of September 1, 2009, through Tamayo's date last insured of June 30, 2013. The ALJ found Tamayo had the following severe impairments: degenerative disc disease, myofascial pain syndrome, fibromyalgia, cervical radiculitis, and adjustment disorder. The ALJ found Tamayo did not meet any Listing. The ALJ assessed Tamayo impairments using the "paragraph B" criteria, and found him to have mild restrictions of daily living, moderate restrictions in social functioning and with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration. The ALJ assessed Tamayo with the RFC to perform sedentary work, except that he could only occasionally stoop, crouch, crawl, balance, and kneel. Further, he found Tamayo could only occasionally perform bilateral reaching and handling, that he required the use of a cane for ambulation, and that he was able to perform simple, routine, repetitive tasks with supervision that was simple, direct, and concrete. Citing and discussing the relevant factors for assessing credibility, the ALJ determined Tamayo was "not entirely credible." (Tr. 15). The ALJ noted Tamayo to be a younger individual (36 years old on the date last insured) with a high school education and some college experience. Relying upon Smith's testimony, the ALJ found Tamayo could perform the jobs of telephone clerk and surveillance system monitor. As a result, the ALJ determined Tamayo was not disabled during the relevant period. (Tr. 10-21).

3

**Listing 11.14:** It is the plaintiff's burden to show disability by meeting a Listing at Step Three. This decision is based solely on the medical evidence, and the plaintiff must meet all the criteria in a Listing. *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995).

Here, Tamayo claims the ALJ erred in failing to find he satisfied Listing 11.14 based upon his peripheral neuropathy. To meet Listing 11.14, a plaintiff must have peripheral neuropathies with disorganization of motor function as described in 11.04B, in spite of prescribed treatment. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14. Listing 11.04B requires significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. Tamayo argues that, "while not technically diagnosed with peripheral neuropathy, his condition medically equals the severity requirements of the Listing." Docket entry no. 9, page 14. In support of his argument that he meets the Listing, Tamayo points to the July 2010 medical examination by neurologist Dr. Reginald Rutherford ("Rutherford"). Rutherford noted that Tamayo reported a long standing problem with pain and numbness in his arms and legs, and an earlier diagnosis of peripheral neuropathy. Rutherford wrote there was "no clinical counterpart noted referable to his self reported level of pain." (Tr. 655). Rutherford summarized that the examination was notable for tremulousness, possible hyperreflexia, and extensor plantar response. Rutherford saw Tamayo approximately one week later, noting MRI of brain and spinal cord was normal, as were blood work, thyroid function, and urine sample. Rutherford recorded that Tamayo was advised "that if I could not come up with a satisfactory diagnosis to explain his clinical picture, arrangements will be made for a second opinion evaluation at the Cleveland Clinic." (Tr. 657).

Subsequently Tamayo was seen at the Cleveland Clinic in September 2010 by Dr. Cheng

4

Ching ("Ching"). Ching noted Tamayo was "very tremulous," with constant movement of his right foot and leg, and noticed "fine tremor in either hand or both. . . Interestingly his tremor is worse in the limb that is being examined. Also on examination had episodes of brief jerks in each all 4 extremities at different times, and not synchronized. Seemed to be voluntary." (Tr. 290). Ching, like Rutherford, had no diagnosis for Tamayo's impairments, but suspected that mood disorders could be influencing the neurological symptoms. (Tr. 292).

Tamayo next argues an October 2013 medical entry supports his claim that he met the Listing. However, Tamayo's last date insured was June 30, 2013, and he bore the burden of establishing, with medical evidence, that the Listing was met during the relevant period. The medical records outside the relevant period are not relevant to satisfy the Listing. The medical records of Rutherford and Ching during the relevant period do not provide a diagnosis of peripheral neuropathy, nor do these records demonstrate Tamayo otherwise met the Listing. There is no merit to this claim.

**Mental RFC:** The ALJ's RFC included nonexertional limitations which limited Tamayo to simple, routine, repetitive tasks with supervision that is simple, direct, and concrete. Tamayo argues that the ALJ should have included a social component (e.g., a limitation on interaction with supervisors, co-workers, or the general public) in the RFC because of the finding, at Steps 2 and 3, that he had moderate difficulties in social functioning. Tamayo does not cite authority which requires an ALJ to include a social component if there has been an earlier finding in the sequential evaluation of moderate difficulties in social functioning. The Court is aware of no such authority. It is undisputed that the RFC determination at Steps 4 and 5 is a separate, more detailed assessment than the "paragraph B" decision made at Steps 2 and 3. Here, the ALJ addressed Tamayo's mental

5

impairments – a history of adjustment disorder and obsessive compulsive disorder ("OCD") dating back to 2003.

The ALJ considered the findings of Dr. Mayur M. Pandya ("Pandya"), who performed a psychiatric evaluation at the Cleveland Clinic in February 2012. Pandya found Tamayo alert and oriented, without tics, tremors, or mannerisms. Further, Pandya recorded Tamayo's speech was clear, coherent, and relevant, and his thoughts were goal oriented and organized. Pandya diagnosed adjustment disorder with mixed emotional features and pain disorder, and assessed Tamayo's GAF to be 51-60, with moderate symptoms or moderate difficulty in social, occupational, or school functioning. (Tr. 306-310).

In addition, the ALJ assigned "some weight" to the finding of the state agency psychological consultant who opined Tamayo was able to do unskilled work that is simple and repetitive with interpersonal contact incidental to the tasks performed and supervision that is direct and concrete. The ALJ noted this opinion was not at odds with any opinion from a treating or examining provider. With regard to Tamayo's mental RFC, the ALJ was not obligated to mirror the findings of any one physician. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Substantial evidence, including the essentially normal behavior and appearance of Tamayo when seen by medical providers during the relevant period, supports the ALJ's mental RFC formulation. The limitations included in the RFC adequately account for Tamayo's mental impairments. Therefore, this argument is without merit.

**Decision not supported by substantial evidence:** Tamayo faults the ALJ's finding that his

condition "is not reflected by any abnormal nerve conduction study, neurological quantitative sudomotor axon reflex test ("QSART") or an electromyography report." (Tr. 17). Tamayo claims the ALJ's finding is factually wrong, and points to the QSART results obtained at the Cleveland Clinic in 2010. A review of the cited medical record reflects a study of Tamayo's left forearm, proximal leg, distal leg, and foot was performed in September 2010. The raw numbers showed normal values in all four areas. Dr. Robert Shields ("Shields"), who supervised the testing, recorded his impression. "QSART responses at the left proximal leg, distal leg, and foot are reduced. These findings are nonspecific for etiology but are consistent with a postganglionic sympathetic sudomotor abnormality like that seen in autonomic/small fiber neuropathy." (Tr. 295).

A fair reading of Shields findings shows that although the levels were normal in all areas he was nevertheless concerned with some of the readings and was searching for a diagnosis. The search for a diagnosis was consistent throughout the medical records during the relevant period. We do not agree with Tamayo's assertion that the 2010 QSART findings contradict the ALJ's statement.

Tamayo also points to Ching's finding of hyperreflexia and upgoing toes as an exception to the ALJ's findings. However, the ALJ's statement was specific, referencing nerve conduction studies, QSARTs, and electromyography reports. Ching's finding of hyperreflexia and upgoing toes is distinct from the test results referenced by the ALJ. There is no conflict between the ALJ's statement and Ching's findings.

There is no merit to Tamayo's claim that the evidence was lacking to support the ALJ's decision. Throughout the relevant period, test results, including nerve conduction studies, EMGs, and MRIs were normal. These results made the diagnosis problematic. The ALJ ably summarized

7

the scenario, and substantial evidence supports the ALJ's decision.

**Failure to fully and fairly develop the record:** While acknowledging that the medical evidence in this case is "voluminous" and "complicated," Tamayo contends the ALJ should have developed the record further because the state agency physicians last reviewed the records in August 2013, and additional medical records were added after that point. We are mindful, however, that the relevant period in this case was from the alleged onset date of September 1, 2009, through Tamayo's date last insured of June 30, 2013. Thus, the vast majority of the medical records cited by Tamayo relate to his condition after the relevant period. There is no showing that these records would have shed great light on his condition during the relevant period. In addition, the ALJ afforded only some weight to the state agency physicians. The ALJ's decision rested primarily on the findings of the treating and examining physicians.

While the parties agree that the ALJ has a duty to fully and fairly develop the record, even when the plaintiff, like Tamayo, is represented by counsel at both the hearing and in this lawsuit, we find no error in this instance. The objective medical evidence in this case was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Under these circumstances, we find no error in the ALJ's reliance upon the record before him.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Tamayo's complaint is dismissed with prejudice.

IT IS SO ORDERED this 9th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE